IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| CHARLES BARRERAS, | |
| Movant, | CIVIL ACTION NO.: 2:20-cv-141 |
| v. | |
| UNITED STATES OF AMERICA, | (Case No.: 2:19-cr-41) |
| Respondent. | |

## REPORT AND RECOMMENDATION

Movant Charles Barreras ("Barreras"), who is currently housed at the Federal Correctional Institution-Coleman in Coleman, Florida, filed a 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence and supporting brief. Docs. 1, 11. The Government filed a Motion to Dismiss, which the Court denied. Docs. 8, 14, 15. The Government then filed a Response to Barreras' § 2255 Motion. Doc. 19. For the reasons which follow, I **RECOMMEND** the Court **DENY** Barreras's § 2255 Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Barreras *in forma pauperis* status on appeal and a Certificate of Appealability.

## BACKGROUND

Barreras was charged with and indicted for attempted coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b). United States v. Barreras, 2:19-cr-41 (S.D. Ga.) ("Crim. Case"), Doc. 1. Barreras faced a sentence of not less than 10 years' and not more than life imprisonment on this count. Crim. Case, Doc. 2. Barreras's retained counsel, Lynne Fleming, filed a motion to suppress on Barreras's behalf, which the Court denied. Crim. Case,

Docs. 29, 51, 54.  Barreras and Ms. Fleming were able to negotiate a plea agreement with the Government whereby Barreras agreed to plead guilty to the sole count of the indictment.  Crim. Case, Doc. 61.  In exchange, the Government agreed to not object to a recommendation Barreras receive a three-level reduction for acceptance of responsibility.  Id. at 3–4.  The plea agreement contained waivers of appeal and collateral attacks, except for claims based on ineffective assistance.  Id. at 7–8.  The Honorable Lisa Godbey Wood held a change of plea, or Rule 11, hearing.

At the outset of this hearing, Judge Wood informed Barreras the purpose of the hearing was to ensure he understood the case pending against him and all the rights he would waive if Judge Wood accepted his plea, there was a factual basis for the finding of guilt on the charge to which he was pleading guilty, and pleading guilty was what Barreras wanted to do after discussing it with Ms. Fleming.  Crim. Case, Doc. 93 at 2–3.  During the plea hearing, Assistant United States Attorney ("AUSA") Joe McCool provided the factual basis for the charge against Barreras by calling Sergeant Mike Walker with the Camden County Sheriff's Office to testify.  Id. at 19–22.  Barreras stated he did not disagree with anything AUSA McCool presented and admitted to the truth of Sergeant Walker's testimony.  Id. at 23.  Judge Wood accepted Barreras's guilty plea, adjudged him guilty of the charged offense, and directed the United States Probation Office to prepare a pre-sentence investigation report ("PSR").  Id. at 23–24.  Judge Wood later sentenced Barreras to 62 months' imprisonment.  Crim. Case, Doc. 85.

Barreras has now filed a § 2255 Motion to challenge his conviction and sentence.  Docs. 1, 11.  The Government filed a Response.  Doc. 19.  This matter is fully briefed and ripe for the Court's review.

**DISCUSSION**

**I.      The Court Should Deny Ground 1 of Barreras's Motion**

In Ground 1 of his Motion, Barreras contends Ms. Fleming rendered ineffective assistance and lists eight instances of claimed ineffective assistance. Doc. 1 at 4; Doc. 11 at 8–9. Barreras states Ms. Fleming failed to: (1) file a 302 form to receive witness statements used against him; (2) ensure Barreras would be held accountable for only the charged offense; (3) investigate whether a search warrant was obtained and the offense was based on entrapment or suggestion and what Barreras' intent was; (4) present favorable evidence; (5) argue for mitigating factors under Federal Rule of Criminal Procedure 32; (6) hold the Government to "proper and favorable terms" of the plea agreement; (7) present evidence the investigating officer had prior involvement with Barreras, which may have been a conflict of interest; and (8) present argument the plea agreement was hinged on a proffer Barreras offered but for which he was not given a sentence reduction. Doc. 11 at 8–9.

The Government responds Barreras offers no citation to caselaw specific to his case and fails to identify any facts in the record to support any of his allegations of ineffective assistance. Doc. 19 at 8. For instance, the Government notes Barreras's assertion Ms. Fleming failed to file a 302 form, yet he does not state what the form is, where it could be filed, which witnesses he references, what the statements were or would be, or how these statements would have changed the outcome of his case.[1] Id. at 8–9. In short, the Government asserts Barreras's ineffective assistance of counsel claims are vague and speculative. See id. at 9 n.2.

---

[1]     The Government reasonably speculates Barreras is referring to an FBI Form 302 but recognizes this would not be a form Barreras's counsel would have "filed." Doc. 19 at 9 n.2. Ultimately, it is unclear what Barreras is actually arguing relating to any "302 form."

A movant bears the burden of showing entitlement to relief under § 2255. Beeman v. United States, 871 F.3d 1215, 1222 (11th Cir. 2017). A movant is not entitled to relief if his claims "are merely conclusory allegations unsupported by specifics, contentions that are wholly incredible on the face of the record, or so patently frivolous as to warrant summary dismissal." Adams v. United States, No. 19-11068-C, 2019 WL 4643730, at *1 (11th Cir. Aug. 20, 2019) (citing Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citations omitted)).

Barreras's ineffective assistance of counsel claims are too vague and conclusory to warrant relief under § 2255. Although Barreras alleges eight instances of ineffective assistance, each instance lacks any supporting details from the record or caselaw. For example, Barreras contends Ms. Fleming "[f]ailed to present favorable evidence in the representation of defendant." Doc. 11 at 9. Barreras does not explain what that evidence might have been, when it should have been presented, or how it would have impacted the disposition of this case in any way. Indeed, Barreras fails to identify anything Ms. Fleming could have done differently with any specificity or how he was prejudiced by her actions or failure to act.[2] Barreras's failure to identify any specific instance of ineffective assistance or prejudice is detrimental to his claims. See Adams, 2019 WL 4643730, at *1 (citing Beeman, 871 F.3d at 1222; and then citing Tejada, 941 F.2d at 1559); see also Strickland v. Washington, 466 U.S. 668, 687 (1984) ("To demonstrate ineffective

---

[2] Barreras's instances of claimed ineffective assistance border on the frivolous. Ms. Fleming filed a sentencing memorandum and addendum totaling nearly 40 pages on Barreras' behalf. Crim. Case, Docs. 81, 83. The Government filed a motion for a downward departure. Crim. Case, Doc. 92 at 2. During the sentencing hearing, Judge Wood noted she reviewed the memorandum, addendum, and the Government's motion and considered those with the facts contained in the PSR, the Probation Office's recommendation on the advisory Guidelines' range, and statutory factors. Id. at 2–4. Judge Wood also considered Barreras's assistance to the Government and argument from Ms. Fleming and the AUSA, as well as Barreras's statements during the hearing. Based on all of this, Judge Wood sentenced Barreras to 62 months, which she noted was "a steep downward departure" from the statutory minimum sentence and the advisory Guidelines. Id. at 14. It is difficult to imagine how Barreras could have received a more favorable sentence had Ms. Fleming done anything differently.

assistance, a movant must show deficient performance and prejudice."). In other words, Barreras's vague and conclusory assertions are insufficient to support any allegation Ms. Fleming performed deficiently in her representation of Barreras and any alleged deficient performance prejudiced him in any manner whatsoever. The Court should **DENY** this ground of Barreras' Motion.

II.     **The Waiver Provision in the Plea Agreement Bars Three of Barreras's Claims**

Barreras contends he received an illegal sentence, though he fails to indicate how his sentence is illegal (Ground 2). Doc. 1 at 5; Doc. 11 at 11. In addition, Barreras contends his plea agreement was "ambiguous" (Ground 3). Barreras alleges he trial counsel led him to sign a plea agreement which was vague and "hinged upon a proffer[] to provide anything to help build a conviction, in which to a[c]quire the signature for the conviction." Doc. 1 at 6; Doc. 11 at 15. He contends he provided the Government with some information but was not allowed to provide more information to allow a further reduction of his sentence. Doc. 11 at 15. Barreras states his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments were violated based on the assertions made in Grounds 1 through 3 of his Motion (Ground 4). Doc. 1 at 8, Doc. 11 at 18.

The Government contends Barreras's claims in Grounds 2, 3, and 4 are barred by the collateral attack waiver provision in his plea agreement. Doc. 19 at 19. The Government also alleges Barreras's waiver was made knowingly and voluntarily. Id. at 20.

After pleading guilty, a defendant can only attack his resulting conviction in "strictly limited" circumstances. Bousley v. United States, 523 U.S. 614, 621 (1998). A § 2255 challenge to a conviction by guilty plea is "ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative, then the conviction and the plea, as a general rule, foreclose the collateral attack." United States v. Broce, 488 U.S. 563,

569 (1989) (finding constitutional a determination defendant could not raise double jeopardy claim on collateral attack following guilty plea); see also Jordan v. United States, CV118-142, 2019 WL 4879136, at *8 (S.D. Ga. Aug. 5, 2019) (noting record verified movant's agreement to collateral attack waiver of all claims other than ineffective assistance of counsel was knowing and voluntary and barred claims covered by that waiver); citing Carstarphen v. United States, Civ. Action No. 07-0417, 2008 WL 4369010, at *2–3 (S.D. Ala. Sept. 25, 2008) (barring review of claims of prosecutorial misconduct based on valid collateral attack waiver)).

When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and his plea is knowing and voluntary. United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987). To determine whether a guilty plea was made knowingly and voluntarily, a court must specifically "address . . . three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Lambert, 777 F. App'x 336, 339 (11th Cir. 2019) (quoting United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005)).

In addition, a defendant must live with what he has told a court under oath. A defendant's sworn testimony to the trial judge in open court is presumed to be truthful. In the context of a plea hearing, the United States Supreme Court has stated, "[T]he representations of the defendant . . . at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73–74 (1977). The defendant's representations are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise. Id.

Barreras and Ms. Fleming were able to negotiate a plea agreement with the Government whereby Barreras agreed to plead guilty to the sole count of the indictment, a violation of 18 U.S.C. § 2422(b), attempted coercion and enticement of a minor. Crim. Case, Doc. 61 at 1. In exchange, the Government agreed to not object to a recommendation Barreras receive a three-level reduction for acceptance of responsibility. Id. at 3–4. The plea agreement set forth the statutory elements and factual basis of the offense to which Barreras was pleading guilty. Id. at 1–2. Barreras agreed he was guilty of the offense. Id. at 2. Additionally, Barreras agreed no one had promised him a particular sentence or range and the Court could impose a sentence up to the statutory maximum sentence but would look to the Sentencing Guidelines and sentencing factors of 18 U.S.C. § 3553(a).[3] Id. at 2–3. The agreement also noted the Government could, in its sole discretion, determine whether Barreras's cooperation qualified as substantial assistance and move for a downward departure. Id. at 5. This plea agreement also contained a collateral attack waiver provision, which states: "Defendant entirely waives his right to collaterally attack his conviction and sentence on any ground and by any method, including but not limited to a 28 U.S.C. § 2255 motion. The only exception is that Defendant may collaterally attack his conviction and sentence based on a claim of ineffective assistance of counsel." Id. at 8. Further, Barreras affirmed he had read and reviewed the agreement with Ms. Fleming, understood the provisions of the agreement, voluntarily agreed to it, and stipulated to the factual basis as being true and accurate in every respect. Id. at 12.

Barreras appeared before Judge Wood for his Rule 11 proceeding. Judge Wood informed Barreras the purpose of the hearing was to ensure Barreras understood the case pending against him, Barreras was aware of what he was doing, there was a factual basis for the finding of guilt

---

[3] Barreras faced a mandatory minimum sentence of 10 years' in prison and a statutory maximum sentence of life imprisonment. Crim. Case, Doc. 61 at 2.

on the charge to which he was pleading guilty, and he had sufficient information about his rights and choices.  Crim. Case, Doc. 93 at 2–3.  Judge Wood asked whether anyone was "making," "pushing," or "leaning on" Barreras to plead guilty, and he replied in the negative and affirmed pleading guilty was what he wanted to do.  Id. at 3.

After Barreras was sworn in, Judge Wood asked Barreras about his educational level, and he stated he has a bachelor's degree and received some other educational training during the course of his 25-year career with the United States Navy.  Id. at 4–5.  Barreras informed Judge Wood he was diagnosed with depression in October 2018 and was taking medications to treat his depression.  Id. at 6.  Barreras also informed Judge Wood he had "a couple of beers" the night before the hearing but the effects of those beers had "[m]ost definitely" worn off by the time of the hearing.  Id.  Judge Wood informed Barreras he had the right to not plead guilty and to go to trial, be represented by counsel at that trial, have the presumption of innocence, to see, hear, and have the Government's witnesses cross-examined, to remain silent, to choose to testify, and to subpoena witnesses on his behalf.  Id. at 7–8.  However, if Barreras chose to plead guilty and Judge Wood accepted that plea, Judge Wood advised Barreras he would be giving up all of these rights associated with a trial.  Id. at 8.  Barreras stated he had the opportunity to speak "in depth" with Ms. Fleming about the facts and law of his case, Ms. Fleming went over the indictment and plea agreement with him, and she generally discussed the Sentencing Guidelines and federal sentencing scheme.  Id. at 9.  Barreras said he was satisfied with Ms. Fleming's representation and had no complaints "whatsoever."  Id.

Judge Wood then reviewed the essential elements of the crime to which Barreras was pleading guilty and what the Government would have to prove on the essential elements, as set forth in the indictment.  Id. at 9–10.  Specifically, Judge Wood advised Barreras to convict him

8

of Count 1 of the Indictment, the Government would have to prove beyond a reasonable doubt three essential elements: (1) Barreras knowingly attempted to persuade, induce, entice, or coerce a minor to engage in sexual activity for which any person could be charged with a criminal offense under Georgia law; (2) Barreras used the Internet and a cell phone to do so; and (3) Barreras believed at the time the person was under 18 years old. Id. at 10. Barreras admitted, by pleading guilty, those essential elements were satisfied. Id. at 10–11.

Judge Wood advised Barreras of the maximum sentence he could impose for the sole count of the Indictment was not more than life but not less that 10 years in prison; Judge Wood made sure Barreras understood § 2422(b) carries with it a mandatory minimum sentence of 10 years' imprisonment. Id. at 11. Judge Wood explained to Barreras, in imposing a sentence upon him, he would have to take into consideration the advisory Sentencing Guidelines and the factors set forth by statute (18 U.S.C. § 3553). Id. at 12. Judge Wood also stated she would consider certain factors, including Barreras's role in the offense, Barreras's criminal history or lack thereof, and whether he came before the Court and told the truth and accepted responsibility for his actions. Id. at 12–13. Barreras stated he understood and had no questions. Id. at 13. Judge Wood explained to Barreras his sentence could not be known at the time of his Rule 11 hearing and any estimate anyone may have made was only an estimate and was not binding on the Court. Id. Barreras affirmed no one had made any promises or guarantees about what sentence he would receive and understood the Court would solely determine his sentence. Barreras verified Ms. Fleming had his permission to negotiate with the United States to reach a plea agreement. Id.

Judge Wood asked AUSA McCool to summarize the provisions of the plea agreement. AUSA McCool stated the material provisions were:

> First, the defendant will plead guilty to Count 1 of the indictment. The Government will not object to a recommendation by the U[.]S[.] Probation Office that the defendant receive an appropriate reduction in offense level for acceptance of responsibility pursuant to [§] 3E1.1 of the [S]entencing [G]uidelines.
>
> The defendant understands he will be required to register as a sex offender upon his release pursuant to 18 [U.S.C. §] 3583.
>
> . . . .
>
> In addition, the defendant waives his right to appeal on any ground with only three exceptions that are outlined in [p]ages 7 and 8 of the defendant's plea agreement.
>
> By signing the plea agreement, the defendant explicitly instructs his attorney not to file an appeal unless one of the three exceptions is met.
>
> In addition, the defendant entirely waives his right to collaterally attack his conviction and sentence on any ground and by any method[,] including but not limited to[,] a 28 [U.S.C. § 2255] motion. The only exception is that the defendant may collaterally attack his conviction and sentence based on a claim of ineffective assistance of counsel.

Id. at 14. Judge Wood asked Ms. Fleming and Barreras, respectively, if AUSA McCool's summarization of the plea agreement was consistent with the plea agreement she negotiated on her client's behalf and with the agreement he signed; they both stated it was. Id. at 16. Barreras affirmed he read the plea agreement before he signed it and no one had made any promises to him regarding the outcome of the case, other than the provisions of the plea agreement. Id. at 16. Judge Wood reminded Barreras the plea agreement contained a collateral attack waiver and he could only file a collateral attack or habeas petition based on an ineffective assistance of counsel claim. Id. at 17–18. Judge Wood advised Barreras he waived his right to appeal his conviction and sentence on any ground, unless the sentence were above the statutory maximum or if Judge Wood sentenced Barreras above the advisory Guidelines range, as found by her, or if the Government appealed. Id. at 17. Barreras affirmed he was willing to waive his rights and agree to the provisions in the plea agreement. Id. at 18.

Judge Wood recounted Barreras's biographical information and determined Barreras was not under the influence of any drugs or alcohol, though she noted Barreras was taking medication to address his diagnosed depression. Id. at 18–19. Judge Wood noted she listened as Barreras answered her questions. She concluded it was "clear" Barreras was "in full possession of all his faculties[]" and "participated intelligently." Id. at 19. Judge Wood determined Barreras's offer to plead guilty to Count 1 was knowing and voluntary. Id.

The Government presented a factual basis for Barreras's plea by calling Sergeant Walker to testify. Sergeant Walker noted he was involved in a joint investigation with law enforcement officials from other agencies to identify individuals who were targeting children for sex using the internet. Id. at 20. Sergeant Walker stated Barreras reached out to an undercover officer posing as a 15-year old through an anonymous social media chat platform. The undercover officer told Barreras she was 15 years old. Id. Barreras agreed to pay the undercover officer $50.00 for engaging in sexual acts. Barreras was later stopped as he was going away from the agreed location and was interviewed after a search incident to arrest. Id. at 21–22. Police recovered a pack of condoms from Barreras, and he admitted to being involved in the Internet chats. He also signed a statement taking responsibility for his actions and apologized. Id. at 22.

Judge Wood asked whether Barreras disputed any of Sergeant Walker's testimony, and Barreras stated he did not. Barreras admitted the truth of Sergeant Walker's testimony. Id. Judge Wood accepted Barreras's plea, found there was a factual basis for his plea, and adjudged him guilty of Count 1 of the Indictment. Id. Judge Wood advised Barreras a probation officer would prepare a PSR, and the Court would schedule a sentencing hearing after the PSR was disclosed to the Government and to Ms. Fleming. Id. at 23–24.

To be clear, Judge Wood informed Barreras at the outset of the initial Rule 11 hearing the purpose of the hearing was for him to understand the case pending against him, the rights he was waiving by pleading guilty, the factual basis for his plea, and whether pleading guilty was what Barreras wanted to do after consultation with his attorney.  Id. at 2–3.  Judge Wood told Barreras he would be asked to swear under penalty of perjury to tell the truth at his Rule 11 hearing or the Government could prosecute him for perjury.  Id. at 3.  Judge Wood discussed the specific rights Barreras was afforded if he chose to persist with a not guilty plea, and Judge Wood advised Barreras he would waive those rights if he pleaded guilty and Judge Wood accepted his plea.  Id. at 7–8.  Barreras stated he had spoken with Ms. Fleming about the facts and law of his case, including the plea agreement, Indictment, and the Sentencing Guidelines in general terms.  Id. at 8–9.  Barreras verified AUSA McCool's summary of the plea agreement was consistent with the plea agreement he had signed.  Id. at 16.  Judge Wood asked Barreras whether he wanted to plead guilty because he was, in fact, guilty of Count 1 of the Indictment, and he answered in the affirmative.  Barreras declared he understood the rights and privileges he was waiving by pleading guilty, including the appeal and collateral attack waivers, and proceeded to do so.  Judge Wood determined Barreras's guilty plea was knowing and voluntary.  Id. at 18.  AUSA McCool provided a factual basis for Barreras's plea, and Barreras did not dispute the Government's factual basis.  Id. at 19–23.  Judge Wood accepted Barreras's plea and adjudged him guilty of Count 1 of the Indictment.  Id. at 23–24.  In so doing, Judge Wood addressed the "three core principles" required during a Rule 11 hearing.  Lambert, 777 F. App'x at 339.

Because Barreras's guilty plea was knowing and voluntary and Judge Wood ensured Barreras understood he was waiving his right to collaterally attack his conviction or sentence in any manner, other than on a claim of ineffective assistance of counsel, the collateral waiver

provisions of Barreras's plea preclude review of Grounds 2, 3, and 4 of his Motion. Thus, the Court should **DENY** these three grounds of Barreras's Motion.[4]

### III.     Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Barreras leave to appeal *in forma pauperis*. Though Barreras has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

---

[4]     It is unnecessary to address the relative merits of the individual grounds of Barreras's Motion or the Government's Response. The Court notes, however, the Government adequately addressed Barreras's Motion and, if the Court were to address the relative merits, it would agree with the Government's assessment.

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued. Pursuant to Rule 11 of the Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller-El, 537 U.S. at 336.

Based on the above analysis of Barreras's Motion and the Government's Response thereto and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appealability; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. If the Court adopts this recommendation and denies Barreras a Certificate of Appealability, Barreras is advised she "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts.

Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court should likewise **DENY** in forma pauperis status on appeal.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DENY** Barreras's § 2255 Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Barreras in forma pauperis status on appeal and a Certificate of Appealability.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 13th day of March, 2023.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA